## HIRST & BEGLEY LINSEED CO. *v.* COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 7482. Decided September 28, 1926.

1. A deduction of $10,000 on account of the loss of a security acquired subsequent to March 1, 1913, for that amount, allowed.

2. Petitioner sold its assets and business during the fiscal year ended July 31, 1919, and agreed to liquidate. For certain reasons

liquidation was not completed for several years. *Held*, that expenditures paid or incurred in years subsequent to the fiscal year ended July 31, 1919, by reason of its continued existence and in connection with the matter of final settlement of its affairs, were not proper deductions from gross income for the fiscal year ended July 31, 1919.

*Oswald D. Luby, Esq.*, for the petitioner.
*W. H. Lawder, Esq.*, for the respondent.

This proceeding involves a deficiency of $31,246.03 for the fiscal year ended July 31, 1919, of which amount $8,400 is in controversy by reason of the refusal of the Commissioner to approve petitioner's claim that it was entitled to a deduction of $10,000 on account of the loss of a United States security of that value, and a further deduction of $10,536.27 alleged to have been incurred during the taxable year as expenses of liquidation.

### FINDINGS OF FACT.

Petitioner was, during the taxable year, a New York corporation, with principal office at Chicago, Ill. Between November 26, 1918, and April 30, 1919, it purchased United States securities as follows:

| | |
|---|---:|
| November 26, 1918 | $10,000 |
| January 27, 1919 | 25,000 |
| April 11, 1919 | 10,000 |
| April 28, 1919 | 10,000 |
| April 30, 1919 | 20,000 |

Thereafter the petitioner sold $65,000 of these securities at par. The security purchased on November 26, 1918, for $10,000 was charged upon the records to "Tax Account." The other securities were charged to Federal Reserve and Liberty Loan accounts. The petitioner's records show that during the taxable year all of the securities with the exception of the one purchased November 26, 1918, were sold for $65,000. Its income and profits taxes for the taxable years ended July 31, 1918, and July 31, 1919, were paid by check. The loss of the $10,000 United States Certificate of Indebtedness purchased November 26, 1918, was discovered during the taxable year ended July 31, 1919, and every effort to locate it was unsuccessful. The petitioner claimed the cost of the bond as a loss for the taxable year ended July 31, 1919, and deducted that amount from gross income.

On December 14, 1918, petitioner sold its business to the National Lead Co. under the terms of the following agreement entered into between the president of the petitioner and a committee representing the National Lead Co.:

First: Vendor Company agrees to sell, and Vendee Company agrees to buy, the entire Linseed Oil manufacturing plant of Vendor Company situated at

2013–19 Mondel Street, Chicago, substantially as said plant existed November 26, 1918, including all land, buildings, machinery, tools, and equipment used or intended to be used in connection therewith, together with all trade-marks, brands and good will of the business then and theretofore conducted thereat, for the sum of One Hundred Six Thousand, Five Hundred Seventy-Six and 41/100 Dollars ($106,576.41), possession of said plant to be given and payment therefor to be made, in cash or its equivalent, on January 15, 1919.

Second: Vendor Company further agrees to sell or deliver to Vendee Company, and Vendee Company agrees to buy and pay for in cash within thirty days from said January 15, 1919, at the respective market prices ruling January 15, 1919, all raw materials, supplies and merchandise on hand, at said plant or in transit thereto on January 15, 1919, and not under contract to be otherwise disposed of, *except* Linseed Oil manufactured or in process of manufacture.

Third: For a period of ninety days from and after the date of its taking possession of said plant, Vendee Company further agrees to deliver from time to time at points within the City of Chicago, for account of Vendor Company and upon its order, and Vendor Company agrees to order for delivery by Vendee Company within such ninety day period, such quantities of pure Linseed Oil of merchantable quality as shall equal in the aggregate the quantity of such Linseed Oil on hand at said plant and delivered into the custody of Vendee Company on January 15, 1919, such deliveries to be subject to the following charges, and the following charges only, which Vendor Company agrees promptly to pay: (a) a reasonable charge for handling and loading; (b) a reasonable cartage charge for deliveries other than at said plant; and (c), with respect to so much of said aggregate quantity if any as represents Linseed Oil in process of manufacture at said plant on January 15, 1919, the actual cost of completing the manufacture thereof.

Fourth: It is further understood and agreed that the conveyances of property herein contemplated to be made by Vendor Company shall be in form satisfactory to Vendee Company and shall be, as respects real property, by full covenant and warranty deed, free and clear of any and all liens or incumbrances, said conveyances to be delivered to Vendee Company simultaneously with possession of said plant and with the payment by Vendee Company of the purchase price thereof hereinbefore mentioned; and that at the same time Vendor Company shall also deliver to Vendee Company satisfactory evidence of the authorization and ratification of said conveyances by the Directors and Stockholders of Vendor Company, in the form of a certified copy of resolution duly adopted by the Board of Directors, and a written consent and ratification signed by all the Stockholders of Vendor Company.

Fifth: Vendor Company further agrees, following the conveyance of property herein contemplated, to proceed as rapidly as possible to a liquidation of its affairs and a distribution of its assets among its Stockholders, and furthermore agrees, as soon as such liquidation and distribution have been effected, either to deliver or cause to be delivered to Vendee Company certificates representing all of its capital stock issued and outstanding, duly endorsed in blank for transfer, or at its own expense to cause the necessary steps to be taken for its dissolution and the surrender of its charter, as Vendee Company may elect.

The transfer of the property mentioned in the contract was made on January 15, 1919. On that date petitioner ceased business and immediately proceeded with liquidation, which, due to the confused condition of the company's records and on account of the matter of

Federal taxes, was not completed during the fiscal year ended July 31, 1919, and has not been completed to this date. More than $10,-000 has been paid or incurred in years subsequent to the fiscal year ended July 31, 1919, for accountant's and attorney's fees, officers' compensation, capital stock tax for the year ended June 30, 1920, discount on accounts receivable, revenue stamps, state corporation fees, deferred charges in connection with claims against the corporation, collection expenses, and rent of safe deposit boxes. Petitioner claimed that the total of the amounts expended in years subsequent to the taxable year incident to the winding up of its affairs necessary before liquidation could be completed, was a proper deduction from gross income for the fiscal year ended July 31, 1919, and deducted the same in its return filed for that year. The Commissioner denied the deduction of the amounts from gross income for the taxable year 1919, upon the ground that they were not expenses paid or incurred within the taxable year in carrying on the business, and were not deductible from gross income for 1919.

### OPINION.

LITTLETON : We are of the opinion from the evidence that petitioner is entitled to a deduction of $10,000 on account of the loss of the security costing that amount. It is shown that securities costing $75,000 were purchased between November 26, 1918, and April 30, 1919, that the loss of the security purchased on November 26, 1918, for $10,000 was discovered during the taxable year, and that all of the other securities either matured and were paid, or were sold for their face value, the total amount received being $65,000. The purchase of the securities was a transaction entered into for profit and petitioner was not compensated for the loss of the $10,000 by insurance or otherwise.

In the opinion of the Board, the position of petitioner that all amounts expended in years subsequent to the fiscal year ended July 31, 1919, the year in which it sold its business and agreed to liquidate, either in connection with matters necessary to complete liquidation, or in connection with its continued existence, were deductible from gross income for the fiscal year ended July 31, 1919, is not well taken. The mere fact that petitioner sold all of its assets and was compelled under its agreement to discontinue manufacturing operations, but was unable under the circumstances to completely dissolve during the taxable year, does not justify the deduction from gross income for the taxable year of amounts paid or incurred in subsequent taxable years, notwithstanding that such expenditures may have been made in carrying out its agreement entered into during the taxable year. The petitioner did not become liable under the

contract of December 14, 1918, for the payment of any specified amount. It has been allowed to deduct such amounts as were paid or incurred during the fiscal year ended July 31, 1919. We find no warrant in the circumstances of this proceeding for allowing as a deduction in the taxable year expenditures made in subsequent years, notwithstanding such expenditures may have been the result of prior transactions or agreements. *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79, *Appeal of Uvalde Co.*, 1 B. T. A. 932, *Appeal of Morrison-Ricker Mfg. Co.*, 2 B. T. A. 1008.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*